UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | Case No. 4:21-CR-396 |
| v. | |
| | |
| MOCTAR AHMADOU GOUROUDJA AHMADOU | |

**GOVERNMENT'S MOTION *IN LIMINE* FOR A PROTECTIVE ORDER
CONCERNING THE TESTIMONY OF A CONFIDENTIAL HUMAN SOURCE**

## I.   INTRODUCTION

On July 28, 2021, Moctar Ahmadou Gouroudja Ahmadou (Ahmadou) was charged by indictment with four counts of being an alien, admitted to the United States under a nonimmigrant visa, in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(5)(B). (Dkt. 5). The charged offenses occurred on Mary 17 and 18 of 2021. (Dkt. 5). Count One charged Ahmadou with the possession of a Taurus pistol on May 17, 2021. (Dkt. 5). Count Two charged Ahmadou with the possession of a Glock pistol, also on May 17, 2021. (Dkt. 5). Count Three charged Ahmadou with possession of a Smith and Wesson M&P rifle on May 18, 2021. (Dkt. 5). While Count Four Charged Ahmadou with possession of Fiocchi ammunition on May 18, 2021. (Dkt. 5).

The United States seeks to allow a Confidential Human Source (CHS) to testify under a pseudonym, wearing a light disguise, from behind a screen, or other appropriate measure, that would prevent those in the gallery from seeing the witness and to provide impeaching information concerning the CHS under a pseudonym. These measures are sought because the disclosure of the CHS's true name would cause serious damage to the national security of the United States,

interfere with crucial on-going national security investigations, and place the safety of the witness at risk. The measures sought via this motion have long been approved by precedent from the Fifth Circuit, her sister circuits, and is in accord with the principles on Sixth Amendment right to cross examinations as elucidated by the Supreme Court. See, e.g., *United States v. El-Mezain*, 664 F.3d 467, 493 (5th Cir. 2011); see also, *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *accord Smith v. Illinois*, 390 U.S. 129, 133-34 (1968). In his concurrence in *Smith v. Illinois*, Justice White noted that limitations on cross-examination are proper to protect the safety of a witness and stated that nothing in the majority's opinion was contrary to that understanding. 390 U.S. at 134 (White, J., concurring). Finally, the Court as recently as last year noted the vital importance of protecting classified information. *Federal Bureau of Investigation v. Fazaga*, 142 S.Ct. 1051 (2022) (unanimous opinion).

The government is filing this motion publicly and the supporting materials are being filed i*n camera, ex parte* and under seal with the Classified Information Security Officer ("CISO") or his designee as specifically provided for by the Classified Information Procedures Act, 18 U.S.C. App. 3, § 4, and Fed. R. Crim. Pro. 16(d)(1).

## II.    BACKGROUND

In or around October 2020, FBI Houston opened a preliminary investigation on Ahmadou, a non-U.S. person, based on his contact information being contained in the telephones used by Adam Alsahli, who conducted an attack using a firearm on the Naval Air Station in Corpus Christi, Texas on May 21, 2020. A subsequent search of Alsahli's residence revealed ISIS propaganda, and FBI confirmed that Alsahli was in communication with the defendant. As a consequence, the FBI became concerned about the defendant's efforts to acquire weapons and develop skills as a marksman. Ahmadou is a citizen of Niger, residing in Texas, after traveling to

the United States on or about March 24, 2016 under a nonimmigrant F1 visa to study at the North American University in Stafford, Texas. Ahmadou completed his course of study in or about December 2020.

An FBI Confidential Human Source (CHS) was brought into the investigation to assist in gathering information.  The CHS is known to be reliable and has been paid approximately $27,000 over three and a half years.  During meetings between the CHS and Ahmadou, Ahmadou discussed, on several occasions, wanting to learn about and become proficient with firearms.  Prior to May 17, 2021, Ahmadou informed the CHS that he wanted to go shoot firearms at a range, the Texas Gun Club, in the Houston area.  The CHS suggested a field or somewhere remote, but Ahmadou selected a local gun range that he had previously gone to.  The FBI was able to verify through records obtained from the gun range that Ahmadou had previously been to that very range.

Agents of the FBI conducted a background check on Ahmadou.  It was discovered that Ahmadou had entered the United States on March 24, 2016, under a nonimmigrant F1 visa, commonly referred to as a student visa, to study at the North American University in Stafford, Texas.  Ahmadou completed his course of study in or about December 2020.  Once Ahmadou completed his studies and graduated, he began his Optional Practical Training (OPT) which allows him to work in a field related to his studies for up to a year.  Subsequently, Ahmadou was issued an Employment Authorization Document (EAD), allowing him to maintain his immigration status and work in OPT until on or about April 18, 2022.  At no time has Ahmadou' s status allowed him to possess or use firearms or ammunition.

On or about May 17, 2021, Ahmadou met with CHS-1 and traveled to Texas Gun Club. While at the gun range, Ahmadou purchased a 30-minute class for two new shooters (Ahmadou and the CHS); one range fee, two 50 round boxes of 9 mm 115 grain ammo, and one firearm rental

for a Glock pistol.  As part of the class Ahmadou possessed and fired a Taurus pistol.  Ahamadou then went and rented the 9 mm Glock pistol and purchased the two boxes of 9mm ammunition.  Ahmadou then possess and fired the firearm and ammunition.   After Ahmadou and CHS-1 completed their time on the range, Ahmadou approached the front desk and requested information on one-to-one personal rifle training for three individuals in order to not split time with others; i.e. a group of other customers.  After he was given the price of the classes, Ahmadou said he would call the gun range back to confirm if he would book the rifle training for May 18, 2021.

On or about May 18, 2021, Ahamdou returned to the same gun range to participate in handling and firing a rifle.  A range employee was the instructor for the Rifle 101 course which was provided to Ahmadou.  The course consisted of firearms safety, manipulation, and shooting a Smith and Wesson M&P rifle.  The first half of the course was conducted in a classroom and the second half was live fire on the firing range. Ahmadou told the employee that he wished to take additional courses and inquired what other courses were offered at the gun club.   The employee informed Ahmadou that the range had three levels of rifle classes titled:  101, 201 and 301.  The 101 course was the class Ahmadou took that day, the 201 consisted of firearm manipulation and the 301 consisted of range movement.  Specifically, in the 301 course, the student learned how to shoot on the move.  Ahmadou was extremely interested in taking the 301 level course.  Per FBI instructions, the employee 4 stated his schedule was completely booked for the next three weeks but Ahmadou could contact the Employee via email in order to schedule the additional training.  Furthermore, after Ahmadou completed the Rifle 101 course, he asked another employee if the range held sniper training courses.  That employee informed Ahmadou there were not any such courses at the range.

Ahmadou's behavior became more erratic. Ahmadou was arrested by the Houston Police Department on narcotics charges on July 21, 2021 and was released on bond the following day.  A federal criminal complaint was sworn out on the morning of July 22, 2021 and a probable cause arrest was authorized by the United States Attorney's Office.  (Dkt. 1).  Later that day a federal arrest warrant was issued charging Ahmadou with violating 18 U.S.C. § 922(g)(5)(B).  (Dkt. 11).

As outlined in the materials filed under seal, the disclosure of the CHS's true name will cause serious damage to national security and could endanger the safety of the CHS. Based on the need to prevent disclosure of the identity of the CHS to protect the safety of the CHS, and to avoid compromising other undercover investigations and  investigative procedures, the government respectfully requests the adoption of certain security measures for the testimony of the CHS at trial. The proposed measures, based on similar measures endorsed by other courts, are narrowly tailored. They assure that the identity and security of these witnesses and the integrity of other undercover investigations will not be compromised by the appearance of the witnesses at trial, without impairing the defendant's Sixth Amendment rights.  Specifically, the government requests that the Court implement the following measures:

1.  Order that the pseudonym, "Mohammad Al-Shamsi," may be used when disclosing to the defense relevant and helpful background information concerning the CHS;

2.  Further order that regard to disclosing relevant and helpful background information, personally identifiable information to include contact information, address, or date or place of birth, or the court of conviction, cause number, or day of conviction can be redacted;

3. Further order that, the CHS may testify at trial using the undercover pseudonym "Mohammad Al-Shamsi" without publicly disclosing his/her true identity;

4. Further order that, the defense shall be prohibited from asking any questions that would reveal personally identifiable information or could lead to the discovery of the true identity of CHS;

5. Further order that, the defense shall be prohibited from asking any questions designed to identify certain online monikers or personas;

6. Further order that, the defense shall be prohibited from asking any questions about other investigations in which CHS may have been or may be involved, including any ongoing investigations;

7. Further order that, the defense shall be prohibited from asking any questions that could reveal the nature or extent of CHS handling techniques or training;

8. Further order that, the CHS may testify in a manner that prevents the witness's facial appearance from being revealed to the public, and the appearance will be obscured in any video or photographic evidence introduced during trial;

9. Further order that, the CHS may testify in light disguise;

10. Further order that, any recordings of the voices of the CHS, apart from the official court record, are prohibited;

11. Further order that, all non-official recording devices shall be prohibited from being in the courtroom in which the CHS testifies, including personal cellular phones;

12. Further order that, no courtroom sketches of the CHS appearing as a witness shall be permitted;

13. Further order that, the CHS shall be permitted to use a non-public entrance to enter and exit from the courthouse and courtroom;

14. Further order that, a screen (or other measure) shall be used to block the view of the CHS from the gallery, however if a screen is used it will be positioned in such a way as to permit the defendant, his counsel and the jury to see the CHS while testifying; and

15. Further order that, the Protective Order sought herein may only be modified through a written superseding order issued by this Court

A proposed protective order setting forth the above conditions is submitted with this motion.

## III.   Elements of the Charged Offenses

As noted above, defendant is charged with four counts of Possession of a Firearm or Ammunition buy an Alien Admitted Under a Nonimmigrant Visa. (Dkt. 5).   The elements for these offenses are straight forward and include the following:

Count One through Four – Possession of a Firearm or Ammunition buy an Alien Admitted Under a Nonimmigrant Visa, 18 U.S.C. §922(g)(5)(B) and 924(a)(2)[1]

First:        That the defendant knowingly possessed a firearm or ammunition, as charged;

---

[1]   Fifth Circuit Pattern Jury Instruction, 2.43D, Possession of a Firearm or Ammunition buy an Alien Admitted Under a Nonimmigrant Visa, in violation of 18 U.S.C. § 922(g).

Second:      At the time the defendant possessed the firearm or ammunition, the defendant, who, being and alien, was admitted to the United States under a nonimmigrant visa;

Third:      That the defendant knew he was an alien who had been admitted to the United States under a nonimmigrant visa;

Fourth:      That at some time before the defendant possessed the firearm or ammunition, the firearm or ammunition was in interstate or foreign commerce, that is, it had traveled at some point from one state or country to another.

The protective measures sought herein will not undermine the ability of the defense to present its case; the defendant can still fully contest these elements and, as noted below, cross-examine the CHS.

## IV.    CHS Should Testify Using a Pseudonym and be Screened from the Public

While the United States Supreme Court has recognized that disclosing a witness's name is normally a part of cross-examination under the Sixth Amendment's confrontation clause, *Smith v. Illinois*, 390 U.S. 129, 131 (1968), it has also clearly recognized the importance of the trial court's ability to place limits on the scope of cross-examination.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). In his concurrence in *Smith v. Illinois*,  Justice White noted that limitations on cross-examination are proper to protect the safety of a witness and stated that nothing in the majority's opinion was contrary to that understanding. 390 U.S. at 134 (White, J., concurring). Finally, the Court as recently as last year noted the vital importance of  protecting classified information. *Federal Bureau of Investigation v. Fazaga*, 142 S.Ct. 1051 (2022) (unanimous opinion).

8

As discussed below, the various courts of appeals in applying the Court's precedent have consistently ruled that, for reasons of safety or to protect classified information, a trial court may allow a witness to testify under a pseudonym (and use other measures to protect the witness's safety) provided that defense counsel is afforded effective cross-examination of the witness. The compelling need to allow the CHS to testify under a pseudonym and behind a screen, along with the other measures requested above, is amply demonstrated by the FBI Declaration submitted under seal. As noted in the materials filed under seal, the disclosure of the CHS's true name will cause serious damage to national security and could endanger the safety of the CHS.

The Fifth Circuit has long recognized the lawfulness and constitutionality of allowing Government witnesses to testify under pseudonyms and without revealing names, addresses, or dates, and places of birth, in order to protect classified information, the safety of the witness, or both. *See United States v. El-Mezain,* 664 F.3d 467, 490-494 (5th Cir. 2011) (upholding the district court's decision allowing two witnesses to testify using pseudonyms in trial involving provision of material support to designated foreign terrorist organization). In addition to the Fifth Circuit, other circuits, most notably the Fourth Circuit where much classified litigation occurs, have likewise recognized the need to place limits on cross-examination under certain circumstances, including those involving classified information. *United States v. Sterling*, 724 F.3d 482, 515-17 (4th Cir. 2013) (interlocutory appeal reversing trial court's decision to disclose the names of CIA operatives to the jury); *United States v. Ramos-Cruz*, 667 F.3d 487, 500-01 (4th Cir. 2012) (recognizing that the defendant's rights under the constitution to identifying information about witnesses may be outweighed by a threat to the safety of the witness); *see also United States v. Ayala*, 601 F.3d 256, 274 (4th Cir. 2010) (police officer from a foreign country testified under a pseudonym for his own protection); *United States v. Zelaya*, 336 F. App'x. 355, 357-58 (4th Cir.

2009) (unpublished); *United States v. Gutierrez de Lopez,* 761 F.3d 1123, 1140-41 (10th Cir. 2014) (allowing witness to testify anonymously where defense counsel was provided with sufficient background information (*e.g.* criminal history, nationality, etc.); *United States v. Mohamud,* 941 F.Supp. 2d 1303, 1317-1319 (D. Ore. 2013) (deletion of true names of two undercover employees, who subsequently testified in court, from discovery did not unfairly hinder the defendant's right to cross-examination where the prosecution provided information about the undercover employees' background, training, and experience, as well as extensive recordings of their interactions with the defendant).

Several courts have also allowed the use of the requested protective measures to protect witnesses' identities from the public at large as a reasonable limit on both the right of confrontation and the right to a public trial. *See e.g.*, *Sterling,* 724 F.3d at 514 (trial court allowed confidential human asset, as well as CIA operatives, to testify from behind a screen that shielded witnesses from public view, but not from the view of defense or jury); *United States v. Lucas,* 932 F.2d 1210, 1216-17 (8th Cir. 1991) (use of a screen to shield undercover detective from general public allowed because of detective's ongoing involvement in narcotics investigations, risk to detective's safety if identity was disclosed, and defendant's right of confrontation was minimally impacted); *United States v. De Jesus-Casteneda*, 705 F.3d 1117, 1119-1120 (9th Cir. 2013) (allowing confidential informant to testify while wearing fake mustache and wig); *Morales v. Artuz,* 281 F.3d 55, 58-62 (2nd Cir. 2002) (witness allowed to testify wearing dark sunglasses). These decisions demonstrate that the reasonable protective measures requested herein are necessary to protect ongoing investigations and the safety of the CHS; moreover, these measures do not violate the Sixth Amendment of the United States Constitution as the Fifth Circuit in *United States v. El-Mezain* has ruled. 664 F.3d at 490-494.

Furthermore, the testimony of the CHS is in many ways cumulative because of the overwhelming evidence against the defendant. The government is in possession of records showing that defendant had been to the gun range one time, long before he ever went with the CHS, thereby documenting defendant's familiarity with the range and the reason defendant selected to use that range.  The actual possession of the firearms and ammunition by the defendant was witnessed by several agents.  While the CHS was present with the defendant, so too were multiple FBI Special Agents.  On May 17, 2021, while defendant was firing two pistols, one FBI agent, dressed as a range employee, stood approximately one yard behind the defendant. Additionally, two more agents were present behind a two-way mirror approximately five yards from defendant observing him shoot.  All of them are able to identify defendant.  On May 18, 2021, when the defendant was firing a rifle on a different part of the range, the same FBI Special Agent once again stood approximately one yard behind defendant while dressed as a range employee.  The two additional agents were present again, approximately five yards away, this time on another bay in the range and able to observe defendant firing the rifle.  Again, all of the agents are able to identify defendant.  Additionally, the defendant was captured in still photographs shooting the pistols on May 17.  When defendant returned on May 18, 2021 he was video recorded shooting rifle.  In light of this evidence, the reliability of the CHS is less important than it would be in other cases—including cases in which the government witness has been allowed to testify using a pseudonym.

Moreover, the United States has, or will, disclose to the defense all payments made to the CHS, as well as the CHS's criminal record—this will allow the defense to cross-examine the CHS and challenge his or her credibility. In addition, the defense has the recorded statements of the CHS with the defendant which may also be used for cross-examination. As in the seminal Fifth

Circuit decision in *United States v. El-Mezain*, "when the national security and safety concerns are balanced against the defendant'[s] ability to conduct meaningful cross-examination, the scale tips in favor of maintaining the secrecy of the witness['s] name[]." 661 F. 3d at 492.

## VI.  CONCLUSION

Based on the foregoing, the government respectfully requests that the Court enter an order authorizing the security measures described herein for the CHS.


Dated this _____ day of February, 2022.

Respectfully submitted,

ALAMDAR HAMDANI
United States Attorney
Southern District of Texas
1000 Louisiana
Suite 2300
Houston, Tx. 77002


*//s// Steven Schammel*_____
Steven Schammel
Richard Bennett
Assistant United States Attorneys


*//s// Michael J. Dittoe*_____
Michael J. Dittoe
Trial Attorney
U.S. Department of Justice
950 Penn. Ave., N.W.
Suite 7600
Washington, D.C. 20530
